**No. 56995.**—The International Glass Co., Inc., and Gehrig, Hoban & Co., Inc. *v.* United States, protest 175399–K (New York).

OLIVER, Chief Judge: This case concerns the classification of merchandise, which is concededly imitation precious or semiprecious stones. The sole question for determination is whether or not the articles are faceted. They are described on the invoice as "Oval silver opal," contained in case 0184, and "Ovals silver opal" contained in case 0182.

The collector classified the merchandise under the provision for "imitation precious stones, not cut or faceted, imitation semiprecious stones, not faceted" in paragraph 1528 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by Presidential proclamation, T. D. 51898, with duty assessment at the rate of 30 per centum ad valorem. Plaintiffs, claiming that the articles are faceted, seek classification under said modified paragraph 1528, as imitation precious stones, or imitation semiprecious stones, faceted, carrying a dutiable rate of 10 per centum ad valorem.

Before discussing the question of fact that is raised under the present issue, it is necessary to reconcile a contradiction which exists in the record concerning samples allegedly representative of the merchandise in question. The conflict in this connection relates to the four stones that comprise plaintiffs' collective exhibit 1, which, under a concession made by Government counsel during the course of the trial, are faceted, so if those articles are to be regarded as truly representative of the present merchandise, then plaintiffs' protest should be sustained.

An employee of the importing corporation, whose duties are "primarily to inspect merchandise arriving from the other side, from the European countries," stated that he took the samples (collective exhibit 1, *supra*), from stock at the request of his employer, one Bernard Frankel, but "What was done with the samples after I gave them to my employer is beyond my knowledge." The witness was vague and indefinite as to the exact time when he withdrew the

samples. He said that it was "possibly two months after we received a shipment, or a month and a half, or possibly a month. It is over a year ago." He was unable to make a positive statement that the samples are identical with articles that were contained in cases 0182 and 0184; he could only say, "They look just like them." His testimony concerning collective exhibit 1, *supra*, falls far short of identifying the said samples as part of the particular merchandise under consideration. Bernard Frankel, referred to as the employer, was not called as a witness. Plaintiffs have failed to establish authenticity of the said samples. Furthermore, the customs examiner, who officially examined the shipment in question, testified that the samples (collective exhibit 1) are "definitely" different from the stones which he received from the importer as having been taken from the two cases in question. The record will not permit of our considering collective exhibit 1, *supra*, as representative of the imported stones. Accordingly, we shall confine our review of the proof as it relates to collective exhibits 2 and 3, which witnesses for both sides agree are from the actual shipment involved, collective exhibit 3, being from case 0184, and collective exhibit 2 from case 0182.

Plaintiffs' witness, hereinabove referred to, testified that prior to his association with the importing corporation, he worked, over a period of 11 years, in the trade dealing with costume jewelry, assisting in the manufacture thereof as well as selling it. His experience included handling stones that were faceted and also those which were not faceted. His testimony, giving his understanding of a facet, is as follows:

X Q. What do you understand a facet to be?—A. A facet, I understand to be a small surface or face, either molded or ground and polished, cut, or what have you, on the stone or on the face of the stone.

X Q. What do you mean, or what have you?—A. Molded, ground, polished, pressed, and any other manner of inserting or imposing a facet upon a smooth surface, or a small face upon a smooth surface.

The facet "may not necessarily enhance the brilliance of a stone, but it may enhance the appearance of the stone."

Referring specifically to the articles in question, he stated that they are faceted, and that "The facets occur around what is known as the girdle, or around the outer circumference of the stone, in this case at the low edge or the base of the stone." He testified that he did not know the purpose of the facets on the stones in question because they are semiopaque, and facets on such stones would not refract or reflect light.

In direct contradiction of plaintiffs' statements that the articles in question are faceted, is the testimony of defendant's witness, a manufacturer and importer of costume jewelry for 26 years, whose business has included the importation of merchandise like the stones under consideration which he used in the manufacture of earrings, necklaces, pins, and pendants. His knowledge about faceting was acquired in Czechoslovakia where he observed the manufacture of stones with facets, bought such stones, and also used them. He characterized the merchandise in question as "a cabochon stone, fire opal type," and testified that these articles are not faceted.

The customs examiner, whose knowledge of faceted stones has been obtained from 7 years' experience in examining importations of imitation jewelry, imitation stones, and related miscellaneous articles, testified that the stones under consideration are not faceted.

The case of *United States* v. *A. Moscini*, 19 C. C. P. A. (Customs) 144, T. D. 45261, is in point. There, as here, the question was whether imitation semiprecious stones were faceted, and in that case, as in the present one, the common meaning of the term "facet" controls. After quoting several definitions from recognized dictionary authorities, the court said:

Facet means face and in the common understanding is a face cut upon stones for the purpose of increasing their brilliancy. Ordinarily the brilliancy of transparent or translucent stones is increased by the light which shines through the stone, and such stone facets are, ordinarily, placed in such relation to each other as to reflect light from one to the other. See article on lapidary and gem cutting, 13 Encyclopaedia Britannica (1929) 715.

It is true that bevels and facets are cuts, in a broad sense, and a facet may have some of the characteristics of a bevel, but it seems to us that "facet" is a narrower term than either "cut" or "bevel," carrying with it the idea that it must be on the face of the stone for the purpose of increasing the brilliancy of the same. Facets also are used for the same purpose when placed on the portion of the stone which sits below the mounting.  *  *  *

The importance of the cited case is its emphasis of the fact that a facet increases the brilliancy of a stone, irrespective of its location, whether on the face of the stone or on a portion that sits below the mounting.

Plaintiffs' only witness in this case stated that what he called "facets" did not "enhance the brilliance of a stone," and further testified that he did not know what purpose the so-called "facets" served in the merchandise under consideration.

It should be borne in mind that the collector classified the stones in question as not faceted, a finding that carries a presumption of correctness. The record herein is insufficient to show that such finding is incorrect, and does not overcome the presumption of correctness attaching to the collector's action.

The protest is overruled and the collector's classification is affirmed. Judgment will be rendered accordingly.